IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM BRYSON TATUM, SR.,   )
                             )
           Plaintiff,        )
                             )
     v.                      )          1:17CV548
                             )
NANCY A. BERRYHILL,          )
Acting Commissioner of Social)
Security,                    )
                             )
                             )
           Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, William Bryson Tatum, Sr., seeks review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

### I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 1, 2013 alleging a disability onset date of July 27, 2012. (Tr. 85, 104, 171-72.) The applications were denied initially and again upon reconsideration. (*Id.* at 86-103.) A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (*Id.* at 38-84.) On April 28, 2016, the ALJ determined that Plaintiff was not disabled under

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 7.)

the Act. (*Id.* at 19-31.) On April 13, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first determined that

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of

2

Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 27, 2012. (Tr. 21.) The ALJ next found that Plaintiff suffered from the following severe impairments: "Lumbar disc degenerative and stenosis; status-post cervical fusion." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 22.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 22-29.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work as defined in 20 CFR 404.1567(b). (*Id.* at 22.) Specifically, the ALJ found Plaintiff had the RFC to:

> lift, carry, push and/or pull up to twenty pounds occasionally and up to ten pounds frequently, and can sit for up to six hours and stand and/or walk for up to six hours in an eight-hour workday. He is limited to frequently operating foot controls with his bilateral lower extremities, and occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and can never climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger bilaterally, and can have no exposure to unprotected heights and moving mechanical parts.

(*Id.*) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 29-30.) Finally, at step five, the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform such as

---

a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

cashier II, mail sorter, and marker. (*Id.* at 30-31.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 31.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises several issues in his brief. (Docket Entry 10.) First, Plaintiff alleges that the ALJ erred in weighing the opinion evidence. (*Id.* at 6-13.) Second, Plaintiff argues the ALJ erred in assessing Plaintiff's subjective statements about his symptoms. (*Id.* at 13-17.) Third Plaintiff claims that substantial evidence does not support the RFC. (*Id.* at 13-14.) For the following reasons, these objections lack merit.

### A. The ALJ Properly Weighed the Opinion Evidence.

Plaintiff alleges that the ALJ erred in giving too little weight to Plaintiff's treating physician Dr. Kwadwo Gyarteng-Dakwa and consultative examiner Dr. Michael Bunch's opinions. (*Id.* at 6-13.) Plaintiff's argument requires the Court to consider whether the ALJ evaluated Dr. Gyarteng-Dakwa's opinion in accordance with the treating physician rule and Dr. Bunch's opinion in accordance with the regulations regarding non-treating medical sources. 20 C.F.R. § 404.1527(c)(2).[3]

---

[3] A treating source is an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1527(a)(2). "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [a claimant] but does not have, or did not have, an ongoing treatment relationship with [a claimant]. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not [a claimant's] treating source." 20 C.F.R 1502 (2011).

4

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. *Id.* The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. *Id.* The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions including those by nontreating sources, deserves deference only if well supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(c)(2)-(4).[4] "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. When declining to accord a treating source controlling weight, an ALJ must articulate "good reasons" for doing so. C.F.R. §§ 404.1527(c).

In the matter before us, pain specialist Dr. Gyarteng-Dakwa treated Plaintiff monthly for some period of time prior to and during the relevant period.[5] (Tr. 24, 253.) During that time, he completed two medical source statements ("MSS"). (Tr. 28, 253, 743-46, 880.) The

---

[4] SSR 96-2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-2p, *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374188, at *1 (July 2, 1996).

[5] It is unclear exactly the length of the treating relationship because the treatment notes from the initial appointment and intake evaluation are not included in the record. (Tr. 24.)

5

first, an October 2013 letter, "assessed disabling limitations, including that the claimant could lift no more than five pounds and sit and stand and/or walk for no more than one hour each." (*Id.* at 28, 253, 880.) The ALJ considered Dr. Gyarteng-Dakwa's letter, but concluded that it was "notably incomplete and lacking in relevant details, including the claimant's name and dates of treatment" and was "not supported by any explanation or clinical findings." (*Id.*) Dr. Gyarteng-Dakwa's letter amply supports this conclusion. The ALJ therefore properly gave the October 2013 letter little weight. *See Coleman v. Colvin*, No. 1:15CV751, 2016 WL 4223583, at *6 (M.D.N.C. Aug. 9, 2016), (The ALJ properly assigned no weight to nurse practitioner's opinions where she provided "little-to-no explanation of the evidence used to form her opinions, which [we]re set forth either in short and conclusory letters or in a check box form, and the record lack[ed] objective medical evidence in support of her conclusory assertions."), *report and recommendation adopted*, No. 1:15CV751, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016).

In his second, May 2014 MSS, Dr. Gyarteng-Dakwa opined Plaintiff could sit and stand and/or walk less than two hours each in an eight-hour workday; could frequently or occasionally lift less than ten pounds; needed the freedom to alternate among sitting, standing, and/or walking at will; would need to walk around or stretch for more than five minutes when transitioning from sitting to standing; could "rarely" use his hands, fingers, and arms to grasp or turn objects, perform fine manipulations, or reach; would have symptoms or side effects from medication that would frequently preclude the attention and concentration needed to perform even simple work tasks; would "very frequently" need to take unscheduled breaks

6

during an eight-hour workday due to "muscle spasms"; and would likely be absent more than four days per month due to his symptoms, treatment, and impairments. (*Id.* at 28-29, 733-46.)

The ALJ gave good reasons for declining to accord Dr. Gyarteng-Dakwa's May 2014 opinion controlling or more than partial weight. First, the ALJ noted that Dr. Gyarteng-Dakwa's own diagnoses, treatment notes, and course of treatment failed to support the extreme limitations he opined. (*Id.* at 28, 743-46.) For example, as to diagnoses,

> Dr. Gyarteng-Dakwa noted lumbago, lumbar degenerative disc disease, muscle weakness and spasm, numbness and tingling, a left-sided positive straight leg raise test, decreased range of motion, and lumbar facet arthropathy. (Exhibit 8F/1-4). He notably did not include diagnoses of lumbar radiculopathy, lower extremity peripheral neuropathy, or objective neurologic abnormalities in his statement.

(*Id.*) As to treatment notes, the ALJ noted that "although the treatment notes from Dr. Gyarteng-Dakwa indicate[d] only "mild" drowsiness side effects at times from the claimant's prescription medication," Dr. Gyarteng-Dakwa's MSS "indicate[d] numerous other side effects not reflected in his medical records." (*Id.* at 28, 268, 270, 272, 274, 286, 349, 379, 503, 509, 515, 745.) Finally, as to the course of treatment, in contrast to the extreme limitations Dr. Gyarteng-Dakwa opined, he provided only "very conservative care." (*Id.* at 29, 266, 268, 270, 272, 247, 276, 286, 497, 663, 1013.) *See Somerville v. Colvin*, No. 1:12CV1360, 2015 WL 1268258, at *3 (M.D.N.C. Mar. 19, 2015) (unpublished) (concluding that the ALJ's decision to give the physician's opinion less than controlling weight was supported by substantial evidence because the physician's opinion was inconsistent with the conservative treatment

7

given to the plaintiff which included injections, medication "hand splint, physical therapy, and chiropractor treatment").

Second, the ALJ concluded that Dr. Gyarteng-Dakwa's opinion was inconsistent with other evidence of record. (*Id.* at 28-29.) For example, Dr. Gyarteng-Dakwa based his opinion that Plaintiff could only rarely use his hands, fingers, and arms to grasp, perform fine manipulations, and reach on Plaintiff's cervical radiculopathy, upper extremity muscle weakness, and positive bilateral Spurling's tests. (*Id.* at 28, 744.) The ALJ noted, however, that "[t]he record notably does not include objective diagnostic evidence establishing cervical radiculopathy, and the claimant has been found to have intact upper extremity muscle strength on numerous examinations . . . ." (*Id.* at 28, 536, 608, 636, 652.) In addition, the ALJ noted that Plaintiff's reports of extreme pain levels, as reflected in Dr. Gyarteng-Dakwa's opinion, did "not correlate with the 'pretty good' findings seen on his lumbar MRIs, which ha[d] remained largely stable and unchanged since 2006." (*Id.* at 29, 259, 743-46.)

Third, the ALJ noted that Dr. Gyarteng-Dakwa's "opinion [wa]s mostly a 'check box' opinion with little analysis or explanation." (*Id.* at 29, 733-36.) *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *Coleman*, 2016 WL 4223583, at *6 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")).

The ALJ therefore considered and gave partial weight to Dr. Gyarteng-Dakwa's opinions "in accordance with his status as a treating source," but he gave Dr. Gyarteng-

8

Dakwa's "assertion regarding the claimant's significantly reduced physical abilities . . . less weight as they [we]re not supported by the other evidence of record." (*Id.* at 28, 743-46.) The above analysis supports this conclusion. The ALJ therefore properly gave Dr. Gyarteng-Dakwa's May 2014 MSS partial and less than partial weight.

The ALJ also properly considered and weighed consultative examiner Dr. Michael Bunch's non-treating source opinion. Based on a one-time consultative examination in January 2014, Dr. Bunch

> assessed that the claimant's chronic neck and back pain appeared to limit his functionality with regards to bending and walking for "prolonged periods," but that he had a "good to fair" physical assessment pending further management of his neck and back pain, and a "fair" prognosis for gainful employment.

(*Id.* at 25, 652).

The ALJ gave this opinion partial weight and the record supports his reasons for doing so. First, the ALJ found that Dr. Bunch's opinion was not fully supported by his own findings. (*Id.*) For example, the ALJ noted that although Plaintiff presented with reduced range of motion, antalgic gait, demonstrated positive straight leg raises, reported altered sensation in lower extremities, and wore a lumbar brace, the examination revealed that he could heel and toe walk, had normal dexterity, did not require an assistive device, and had essentially functional strength in his upper and lower extremities. (*Id.*)[6]

---

[6] The ALJ also noted that despite Plaintiff's reports of upper extremity paresthesias and reduced manipulative function, Dr. Bunch found Plaintiff he had normal ability to pinch, grasp, and manipulate objects, and intact sensation in both upper extremities. (*Id.* at 25, 649-50, 652.) The ALJ nevertheless included some limitations to account for Plaintiff's reports. (Tr. 22, 28.)

9

Second, the ALJ concluded that Dr. Bunch failed to thoroughly articulate his reasoning. (*Id.*) Specifically, the ALJ found that although Dr. Bunch's report described various clinical findings, Dr. Bunch did not provide a narrative basis for his assessment and Dr. Bunch's findings regarding Plaintiff's prognosis lacked a supporting explanation. (*Id.* at 25, 649-52.) *See* 20 C.F.R. § 404.1527(c)(3).

Finally, Dr. Bunch did not articulate specific functional limitations. (Tr. 25, 652.) That is, Dr. Bunch's "description of the claimant's back and neck pain 'limiting [his] functionality' with bending and walking for 'prolonged periods' [was] vague and [did] not offer substantive guidance as to his opinion regarding the claimant's ability to perform exertional activities on a regular basis throughout an eight-hour workday." (*Id.* (first alteration in the original).) *See Sineath v. Colvin*, No. 1:16CV28, 2016 WL 4224051, at *7 (M.D.N.C. Aug. 9, 2016) (citing *Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *4 (M.D.N.C. Apr. 22, 2016)) (finding the ALJ did not err in failing to weigh a statement regarding the decline in Plaintiff's daily function that was vague, failed to detail any of the claimant's functional limitations, or indicate what that claimant could still do despite her impairments), *report and recommendation adopted*, slip op. (M.D.N.C. Sep. 13, 2016); *see also Birchfield v. Colvin*, No. 1:15CV53, 2016 WL 3566740, at *3 (W.D.N.C. June 30, 2016) (finding that the ALJ did not have to adopt the findings of the plaintiff's physicians because the physicians did not offer judgments regarding her ability to perform specific work-related functions or limitations resulting from her impairments). The ALJ thus properly considered and accorded partial weight to Dr. Bunch's assessment.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff contends that the ALJ "attempt[ed] to undermine" Dr. Gyarteng-Dakwa's conclusions (Docket Entry 10 at 11-12) by pointing out that Dr. Gyarteng-Dakwa treated Plaintiff's back pain with narcotic pain medication and injections in spite of Plaintiff's neurosurgeon Dr. Robert Isaacs's recommendation that Plaintiff avoid such treatments in favor of nonsteroidal anti-inflammatory drugs ("NSAIDs") and "arthritic type treatments" (Tr. 24, 27, 29, 30, 254-61).[7] Plaintiff thus contends that the ALJ improperly considered the treatment Dr. Gyarteng-Dakwa provided Plaintiff to be "non-compliant" and discounted Dr. Gyarteng-Dakwa's opinions on that basis. (Docket Entry 10 at 11-12.) The Court disagrees. As Plaintiff noted, the ALJ "never [drew] a clear connection" between his observation and the weight he gave Dr. Gyarteng-Dawka's opinion. (Docket Entry 10 at 12.) Thus, it is not clear that the ALJ reduced the weight he gave Dr. Gyarteng-Dakwa's opinion based on Dr. Isaacs's contrary treatment recommendation. Neither is it immediately obvious to the Court that it would have been impermissible for the ALJ to have done so, and Plaintiff provides no authority to support this assertion. And, in any event, as previously discussed, the ALJ provided many other good, well-supported reasons for giving little and partial weight to Dr. Gyarteng-Dawka's opinions. Thus, any error in considering Dr. Isaac's recommendation was harmless.

---

[7] Plaintiff also disagrees with the ALJ's characterization of Dr. Isaacs as Plaintiff's "treating neurosurgeon" and "treating neurologist." (Docket Entry 10 at 11-12; Tr. 27, 29.) Plaintiff contends that he had no ongoing treatment relationship with Dr. Isaacs, who performed Plaintiff's neck surgery in 2007 and who Plaintiff visited for a surgical consultation in 2011. (Docket Entry 10 at 11-12.) The Court disagrees that this does not constitute an ongoing treating relationship. 20 C.F.R. § 404.1527(a)(2).

Second, Plaintiff contends that the ALJ improperly discredited Dr. Gyarteng-Dakwa's electro-diagnostic studies because Dr. Gyarteng-Dakwa, as opposed to a neurologist, interpreted the results. (Docket Entry 10 at 11.) Again, the Court finds no harmful error. The ALJ noted that Dr. Gyarteng-Dakwa's studies, as interpreted by him, "reflected notably inconsistent findings regarding the nature, severity, and location of the abnormalities." (Tr. 25, 305, 318, 327, 664, 681-82, 708, 914, 1030-31.) That inconsistency constituted good reason to give less weight to Dr. Gyarteng-Dakwa's test results and any opinions based on them.

Generally, Plaintiff contends that Dr. Gyarteng-Dakwa's opinions were not inconsistent with other evidence of record.[8] Consequently, Plaintiff argues, the treating relationship between Dr. Gyarteng-Dakwa and Plaintiff required the ALJ to give Dr. Gyarteng-Dakwa's opinion controlling weight. (Docket Entry 10 at 6-7, 9-11.) These arguments lack merit because the ALJ took specific note of the treatment relationship. (Tr. 29.) In addition, as detailed above, the ALJ cited specific evidence to support his conclusion that Dr. Gyarteng-Dakwa's opinions were inconsistent with his own treatment notes, the conservative care he provided, and other evidence of record and lacked explanation and

---

[8] Plaintiff specifically cites to evidence the ALJ expressly considered and, where not inconsistent with other evidence, addressed in the RFC. (Docket Entry 10 at 9-10.) Specifically, Plaintiff points to the 2010 and "relatively unchanged" 2016 MRI (Docket Entry 10 at 9; Tr. 24, 631, 1077, 1079); Dr. Gyarteng-Dakwa's internally inconsistent electrodiagnostic sensory conduction studies (Docket Entry 10 at 9-10; Tr. 25, 305, 318, 327, 664, 681-82, 708, 914, 1030-31), and examination findings such as trigger points in the bilateral cervical paraspinal muscles, muscle spasms, reduced range of motion, positive straight leg raising, and altered sensation in the lower extremities (Docket Entry 10 at 10; Tr. 22, 25, 27-28).

support. (*Id.* at 28-29.) In now asserting that Dr. Gyarteng-Dakwa's opinion is not inconsistent with the record, Plaintiff essentially asks the Court to re-weigh the evidence and substitute its judgment for that of the Commissioner. Where, as here, the ALJ has properly considered all the evidence and supported his conclusions with substantial evidence, the Court must decline. *Craig*, 76 F.3d at 589.

The above demonstrates that the ALJ gave good reasons, and provided substantial evidence, for the weight he gave Drs. Gyarteng-Dakwa and Bunch's opinions. Thus, the ALJ appropriately considered the factors set forth in 20 C.F.R. §§ 404.1527(c)(2), and the undersigned has found no evidence to the contrary.

### B. The ALJ Properly Evaluated Plaintiff's Statements About His Symptoms.

Plaintiff next argues that the ALJ erred in finding Plaintiff's subjective statements about his symptoms inconsistent with the record. (Docket Entry 10 at 13-17.) The Court disagrees. *Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d 585. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 589 (citing 20 C.F.R. §§ 404.1529(b)). If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the

objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors set forth in 20 C.F.R. §§ 404.1529(c)(3), and heard the claimant's testimony and observed his demeanor, the ALJ's . . . determination [regarding a Plaintiff's subjective statements] is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ first carefully noted Plaintiff's allegations:

> The claimant has alleged disability based primarily upon a history of cervical impairments with radiation to his bilateral upper extremities, as well as low back problems with severe radiation and paresthesias throughout his lower extremities to his feet. (Exhibit 2E/2; hearing testimony). At [the] hearing, the claimant reported debilitating symptoms and limitations related to the above problems, including extreme pain, numbness, and burning sensations radiating from his low back throughout his lower extremities, as well as upper extremity paresthesias and weakness. He testified that his low back and lower extremity symptoms cause constant and disabling pain and instability that notably reduce his exertional abilities and cause [him] to stumble and become unsteady when walking. He further indicated that, while his 2007 cervical fusion surgery largely resolved his neck pain, he has had ongoing upper extremity radiculopathy, paresthesias, and weakness that cause him to drop items. He also alleged significant side effects from his narcotic medication pain regimen, including drowsiness, dizziness, and difficulty concentrating.

(*Id.* at 23, 189, 53-77.)

Next, the ALJ completed the two-step *Craig* analysis. First, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 23.) Thus, the ALJ performed the first step of the *Craig* analysis. Second, the ALJ performed step two of the analysis, concluding that Plaintiff's

14

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*)

The ALJ went on to articulate clear reasons for finding Plaintiff's subjective statements regarding his symptoms not entirely consistent with the record and substantial evidence supports his analysis. First, the ALJ found Plaintiff's statements were inconsistent with the objective diagnostic studies, including MRIs and a CT scan of the cervical spine and MRIs of the lumbar spine. (*Id.* at 23-29, 249-51, 1075-78.) In particular, a 2016 MRI of the lumbar spine was "relatively unchanged" as compared to a MRI from 2010 when Plaintiff continued to work at the heavy to very heavy exertional level. (*Id.* at 24, 631, 1077, 1079.) *See Craig*, 76 F.3d at 595 n.7 (finding a claimant who did past relevant work with same impairment cannot, as a matter of law, be found disabled absent significant deterioration of condition).

Second, the ALJ found Plaintiff's statements were inconsistent with clinical findings and objective evidence. Specifically, his statements were inconsistent with Dr. Bunch's clinical findings, including essentially functional strength in the upper and lower extremities, the ability to heel and toe walk, normal dexterity, no need for an assistive device, and normal ability to pinch, grasp, and manipulate small and large objects with the upper extremities. (Tr. 25-26, 649, 652.) Plaintiff's statements were similarly inconsistent with nurse practitioner Sarah Wagner's clinical findings, including normal gait, symmetric and normal motor function, no gross musculoskeletal deformity, intact reflexes, and no need for an assistive device. (*Id.* at 26, 1071, 1081.) The record also did not "include objective evidence corroborating

15

[Plaintiff's] reports of debilitating and ongoing upper extremity paresthesias and radiculopathy." (*Id.* at 27.)

Third, Plaintiff statements were themselves contradictory. For example, "[a]lthough [Plaintiff] has indicated that his symptoms became so disabling that he became unable to work as of July 2012, he also reported that he was 'wrongfully terminated' from his employment at this time." (*Id.* at 24, 27, 189). *See Hunter v. Sullivan*, 993 F.2d 31, 34-35 (4th Cir. 1992) (finding that claimant's allegations as to the severity of symptoms, including pain, were undercut by testimony that he stopped working due to a layoff rather than any physical or psychiatric impairment). Plaintiff also claimed that his treatment resulted in little to no improvement, yet he continued to pursue the same treatment modalities. (Tr. 24, 650; *see e.g.*, 659-666.)

Fourth, Plaintiff's statements were inconsistent with the conservative treatment he received. (*Id.* at 27.) That is, he had no active or specialized care other than pain management. (*Id.; see e.g.*, Tr. 266, 268, 270, 272, 274, 343, 375, 401, 443, 467, 497, 535, 561, 587, 607, 633, 665.) Finally, Plaintiff's statements were inconsistent with the opinion evidence, particularly that of Dr. Isaacs and the state agency physician. (*Id.* at 29, 100-01.) In this case, therefore, the ALJ considered Plaintiff's statements regarding his subjective symptoms and articulated clear, specific inconsistencies between Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms and the medical and other evidence. The undersigned thus concludes that substantial evidence supports the ALJ's analysis of Plaintiff's subjective statements.

Plaintiff counters that the ALJ erred by improperly requiring objective evidence that his condition had worsened. (Docket Entry 10 at 14-15.) But as the above makes clear, the fact that Plaintiff's MRIs did not show significant worsening was but one of many inconsistencies the ALJ found between Plaintiff's allegations and the record. (Tr. 24, 1075, 1077.) And, the Court finds no impropriety in the ALJ considering whether Plaintiff's condition worsened between the time he performed heavy or very heavy work and the period of disability. *See Craig*, 76 F.3d at 595 n.7.

### C. Substantial Evidence Supports the RFC

Notwithstanding the ALJ's proper analysis of Plaintiff's symptoms and the opinion and other evidence of record detailed above, Plaintiff contends that the RFC is without support. (Docket Entry 10 at 13-14.) Specifically, he argues that the evidence directs greater limitations, particularly as to Plaintiff's ability to sit, stand, walk, bend, handle, and finger. (*Id.*) Plaintiff's argument is unavailing. For the reasons that follow, the ALJ's RFC determination was proper and well supported.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1520. An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1520. The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).

17

*See* 20 C.F.R. §§ 404.1520. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1520.

Here, the ALJ's RFC determination is well reasoned and well supported. In formulating the RFC, the ALJ considered the opinion evidence discussed above. He also considered state agency physician Dr. E. Woods's opinion that Plaintiff could perform light work with additional postural limitations. (Tr. 29, 100-101.) The RFC reflects all of the state agency consultant's proposed limitations, which the ALJ found "not inconsistent with the findings of the consultative examiner, the claimant's treating neurologist, or the claimant's largely intact presentation on physical examination." (*Id.* at 22, 29, 100-01, 258-59, 649-52, 1071, 1081.) However, the ALJ also "considered the claimant's subjective allegations, narcotic pain medication regimen, and history of spinal fusion in finding some additional restrictions justified, such as protections against hazards and frequent handling and fingering." (*Id.* at 29.)

> The ALJ further explained his reasoning as follows:
>
>> Despite the claimant's limited and inconsistent treatment history, the lack of active or specialized care aside from pain management, which was explicitly advised against by his treating neurologist, and his largely intact physical functioning on examination, the undersigned has considered the medical evidence of record showing some abnormal findings on examination, his history of cervical fusion, the radiology evidence of record, and the claimant's subjective allegations in finding that he can perform work at the light exertional level. His reduced shoulder elevation and cervical fusion with reports of ongoing upper extremity paresthesias and weakness, as well as his low back impairments with reported lower extremity pain, paresthesias, and weakness, limit him to lifting up to twenty pounds occasionally and ten pounds frequently, and sitting for up to six hours and standing

and/or walking for up to six hours in an eight-hour workday. His complaints of lower extremity pain and paresthesias also restrict him to frequently operating foot controls with his bilateral lower extremities, as well as occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds or being exposed to unprotected heights and moving mechanical parts. His upper extremity paresthesias with alleged weakness and reduced gripping and grasping abilities, while not seen on clinical examination, have been considered in limiting him to frequent handling and fingering with his bilateral upper extremities. These restrictions also accommodate the side effects of the claimant's narcotic pain medications.

(*Id.* at 27-28.) The ALJ therefore thoroughly explained how he determined Plaintiff's RFC and supported his determination with substantial evidence.

Plaintiff nevertheless contends that the evidence directs a different result. (Docket Entry 10 at 13-17.) In so doing, Plaintiff again asks the Court to impermissibly re-weigh evidence and substitute its judgment for that of the Commissioner. The Court declines. *Craig*, 76 F.3d at 589. Substantial evidence supports the ALJ's analysis of Plaintiff's statements about his symptoms and his RFC determination, and the undersigned can find no reason to disturb the decision.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner

(Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster  
United States Magistrate Judge

August 2, 2018  
Durham, North Carolina