# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM BRYSON TATUM, SR.,    )
                                   )
            Plaintiff,     )
     v.                       )
                                   )
NANCY A. BERRYHILL,          )         1:17CV548
Acting Commissioner of Social   )
Security,                        )
                                   )
           Defendant.   )
                                   )

## MEMORANDUM ORDER

The Recommendation of the United States Magistrate Judge was filed with the Court in accordance with 28 U.S.C. § 636(b) and was served on the parties in this action on August 2, 2018. (Mem. Op. & Recommendation of the U.S. Magistrate Judge ("Recommendation") [Doc. #14]; Notice of Mailing Recommendation [Doc. #15]). Plaintiff William Bryson Tatum, Sr. ("Tatum") objected to the Recommendation within the time limits prescribed by 28 U.S.C. § 636, (Obj. to the Recommended Ruling ("Tatum's Obj.") [Doc. #16]), to which Nancy A. Berryhill ("Commissioner") filed a response, (Response to Objection [Doc. #17]). For the reasons explained below, the Recommendation is ADOPTED.

I.

The Court has appropriately reviewed the portions of the Magistrate Judge's Recommendation to which objection was made and has made a de novo determination to adopt the Recommendation. Tatum asserts one objection,

arguing that "the Magistrate Judge failed to apply recent 4th Circuit case law

prohibiting ALJs from 'playing doctor' and cherrypicking evidence." (Tatum's Obj.

at 1 (internal capitalization omitted).)  In support of this objection, Tatum argues

that the ALJ committed a "legal error" when he "rel[ied] on his own lay opinion,

rather than the evidence of record" and rejected the opinion of Dr. Kwadwo

Gyarteng-Dakwa ("Dr. Dakwa"), Tatum's treating physician.[1] (Id. at 1-2.)

A.

A treating physician, or "treating source", is a claimant's "own acceptable

medical source who provides [the claimant], or has provided [the claimant], with

medical treatment or evaluation and who has, or has had, an ongoing treatment

relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2) (2017).  For claims

which were filed before March 27, 2017, such as Tatum's, controlling weight is

given to a treating physician's opinion regarding the nature and severity of a

claimant's impairments if the treating physician's opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record . . . ." Id. §

404.1527(c)(2) (2017); see Brown v. Comm'r of SSA, 873 F.3d 251, 255-56 (4th

Cir. 2017).  If a treating physician's opinion does not merit controlling weight, five

---

[1] Tatum identifies a second "legal error"— the ALJ's "highly selective citation of evidence to support his conclusions resulted in a mischaracterization of the record." (Tatum's Obj. at 2.)  However, he makes no arguments or references to this argument in the rest of his brief. (See generally Tatum's Obj.)  In light of this, and because the record does not support this contention, it is not addressed further in this opinion.

factors are used to determine what weight the opinion should receive: (1) "length of the treatment relationship and the frequency of examination;" (2) "nature and extent of the treatment relationship;" (3) supportability; (4) consistency; and (5) specialization. Id. § 404.1527(c)(2)(i)-(ii),(3)-(5); see also Brown, 873 F.3d at 256. Supportability refers to "the quality of the explanation provided for the medical opinion and amount of relevant evidence—'particularly medical signs and laboratory findings'—substantiating it." Brown, 873 F.3d at 256 (citing 20 C.F.R. § 404.1527(c)(3)).

Consistency means "how consistent the medical opinion is with the record as a whole," 20 C.F.R. § 404.1527(c)(4). Finally, a court "give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." Id. § 404.1527(c)(5).

### B.

Tatum relies on Brown and Lewis v. Berryhill, 858 F.3d 858 (4th Cir. 2017), to support his contention that the ALJ "relied on his own lay opinion about medical questions." (Tatum's Obj. at 2.) Tatum argues that "the ALJ maintained that Dr. Dakwa's opinion could not be credited in the absence of diagnoses of lumbar radiculopathy and lower extremity neuropathy," but that the ALJ offered no explanation for why these diagnoses "were required to justify the limitations endorsed by Dr. Dakwa." (Id. at 4.) Tatum argues that this, along with the ALJ's analysis that the MRI results were not consistent with severe pain, constitute the

ALJ's impermissibly "playing doctor." (Id. at 5.)  Despite Tatum's arguments, both

Brown and Lewis are distinguishable from the instant case, and neither support

remand.

In Brown, the ALJ rejected the consistent opinions of five of the plaintiff's

treating physicians and gave more credit to the Commissioner's nontreating and

nonexamining expert, Dr. Jonas. 873 F.3d at 265-66.  The Fourth Circuit noted

that not only did the ALJ flout the treating physician rule, but his decision to rely

upon Dr. Jonas was not justified by three of the relevant factors: supportability,

consistency, and specialization. Id. at 268.  Dr. Jonas' opinion was not

supportable because he only cited a few medical records and two diagnostic tests

before "summarily opining" that there was no objective physical evidence

supporting the plaintiff's claims of pain. Id.  His opinion was not consistent with

the ALJ's findings of severe impairments, and he rejected a diagnosis that the ALJ

had accepted. Id. at 268-69.  Finally, while he was a specialist, he was a specialist

in psychiatry, and not in orthopedics, even though much of his testimony

concerned the intensity and frequency of the plaintiff's physical pain. Id. at 269.

Using these factors, the Fourth Circuit concluded that "the only possible

justification left for the ALJ's crediting of Dr. Jonas over [the plaintiff's] treating

and examining sources is that Dr. Jonas' opinion lined up most closely with the

view of the record espoused by the ALJ . . . ." Id.  The court further noted that the

ALJ improperly concluded the plaintiff's pain was not as severe as he claimed,

based off his observation that Brown "was able to sit through the second ALJ

hearing, take a certain psychological test . . . and manage his own money,"
thereby substituting his own judgment "for the judgments of medical professionals
who had treated and examined Brown over many years." Id. at 271.

Similarly in Lewis, the ALJ "failed to adequately explain why he failed to
give the opinions of Lewis' treating physicians controlling weight . . . ." 858 F.3d
at 867. The Fourth Circuit noted that the ALJ spent only four lines discussing the
opinions of the treating physicians, and in those lines, failed to cite anything in the
record indicating the treating physicians' opinions were not well supported by
medically acceptable techniques. Id. Additionally, the ALJ ignored the conclusions
of the non-treating physicians, whose opinions were consistent with those of the
treating physicians. Id. at 868. Therefore, the Fourth Circuit concluded "the ALJ
inappropriately substituted a subjective decision for that of the overwhelming
medical evidence . . . by opining that [the plaintiff] over-reported her pain." Id.

Neither Brown nor Lewis support Tatum's objection. First, none of the
errors present in Brown or Lewis are present in Tatum's case. Unlike Brown, the
ALJ here did not ignore an overwhelming amount of evidence presented by treating
physicians in favor of one opinion that was inconsistent with all others. And unlike
Lewis, the ALJ did not summarily explain why he did not give controlling weight to
Dr. Dakwa's opinion. Instead, as the Magistrate Judge correctly notes, "the ALJ
noted that [Dr. Dakwa's] own diagnoses, treatment notes, and course of treatment
failed to support the extreme limitations he opined." (Recommendation at 7.)
Further, the ALJ determined Dr. Dakwa's opinion was inconsistent with the other

evidence in the record and noted that his opinion lacked analysis or explanation. (Id. at 8.) Additionally, the ALJ did not make these decisions without explanation; instead, he supported these conclusions with extensive discussion. (See Recommendation at 5-9 (giving a detailed summary of the ALJ's opinion along with citations to the Administrative Record of exactly what information the ALJ considered).)

Next, in contrast to Tatum's characterization, (see Tatum's Obj. at 4), the ALJ did not maintain that he could not credit Dr. Dakwa's opinion solely because he did not diagnose Tatum with lumbar radiculopathy and lower extremity neuropathy[2], see Administrative Record ("AR") at 28. Instead, he mentioned it as one factor among many that he used to determine what weight to assign to Dr. Dakwa's opinion. Id. at 28-29. For example, the ALJ considered evidence including, but not limited to, (1) the inconsistencies between Dr. Dakwa's treatment notes and his treating source statement, compare id. at 745 with id. at 800 (writing in his treatment source statement on May 2, 2014 that Tatum suffered from constipation and drowsiness as side effects of medications, but writing the previous day, May 1, 2014 in a Follow-Up Intake Form that Tatum was

_____

[2] While it is true that the ALJ does not clarify why he mentions these specific diagnoses, a review of the record reveals Dr. Dakwa twice mentioned lumbar radiculopathy in diagnostic summaries of Electrodiagnostic Reports, AR at 296, 318, and Tatum testified at his hearing that he experiences neuropathy in his feet, AR at 59, 72, which presumably qualify as lower extremities. Therefore, it seems likely the ALJ mentioned these diagnoses because of the evidence presented about them throughout the case.

experiencing no side effects from medication); (2) the letter he submitted in support of Tatum that lacked information about Tatum and instead stated that Tatum had been "under my professional care since *date*" and "these functional limitations has rendered *patient name* disabled*,*" id. at 253 (emphasis in original); and, (3) the MRIs and notes completed by Dr. Isaacs that note that Tatum's lumbar spine looked "pretty good," and no major changes had occurred since his last MRI in 2006, id. at 258-59. See id. at 28.

Furthermore, even if the ALJ's focus on these diagnoses were error, it would be a harmless error, because, as mentioned previously, these diagnoses were not the only reason the ALJ afforded partial weight to Dr. Dakwa's opinion. See Fletcher v. Colvin, No. 1:15CV166, 2016 WL 915196, at *10, *11 n.13 (M.D.N.C. Mar. 4, 2016) (finding that the ALJ's failure to list a restriction in her hypothetical "did not change the outcome of the decision and amounts to harmless error," and further explaining that the Fourth Circuit recognizes harmless error in the Social Security disability context as a standard that "tells courts to review cases for errors of law without regard to errors that do not affect the parties' substantial rights") (internal quotations omitted), adopted by unpublished judgment (Mar. 28, 2016); Cf. Patterson v. Comm'r of SSA, 846 F.3d 656, 662 (4th Cir. 2017) (finding that ALJ's failure to address conflicting evidence or explain contrary findings of other doctors was not harmless error and therefore required remand).

Next, neither Brown nor Lewis support Tatum's argument that the ALJ "impermissibly played doctor" in determining "what MRI findings are consistent

with severe pain." (See Tatum's Obj. at 5.) In contrast to Tatum's argument, the ALJ did not play doctor, but instead cited the objective medical opinion of Dr. Isaacs, a neurosurgeon at Duke Medicine, who performed Tatum's MRI and previous cervical fusion. See AR at 24, 29. In an outpatient visit on August 31, 2011, Dr. Isaacs states,

> I operated on Mr. Tatum several years ago for a cervical decompression and fusion for acute onset of myelopathy with dense sensory changes. This has persisted now 4-5 years later. It has not worsened and his neck feels really good. Unfortunately he still has some lower back pain. . . . His lumbar spine looks pretty good. . . . I would tend to avoid narcotics and probably even injections in a case like this and stick more towards the NSAID route and arthritic type treatments.

Id. at 258-59 (emphasis added). The ALJ acted in accordance with 20 C.F.R. § 404.1527(c), see supra at 2-3, and did not play doctor, when he concluded that Dr. Isaacs' conclusions "do not correlate" with Tatum's reports of "extreme pain levels," see AR at 29.

Although Dr. Isaacs' assessment of Tatum occurred before Tatum's alleged disability onset date, a review of the Administrative Record cited by Tatum in his Objection, and the record as a whole, reveals no objective medical evidence that undermines the ALJ's decision to credit the opinion of Dr. Isaacs. Dr. Dakwa continued to see Tatum after his appointment with Dr. Isaacs, but Dr. Dakwa made no meaningful changes to Tatum's care, nor is there any evidence of any additional MRIs, medical procedures or other objective medical evidence that conflicts with Dr. Isaacs' opinion. See id. at

8

266-81, 296, 320, 420, 664, 708, 722-23, 730-31 (detailing the treatment provided to Tatum by Dr. Dakwa after the August 31, 2011 MRI performed by Dr. Isaacs.)  Thus, Tatum's arguments do not show any errors committed by the ALJ, and therefore, remand is not warranted.

II.

For the reasons stated herein, IT IS HEREBY ORDERED that the Recommendation of the United States Magistrate Judge [Doc. #14] is ADOPTED. IT IS FURTHER ORDERED that Plaintiff William Bryson Tatum, Sr.'s Motion for Judgment Reversing the Commissioner [Doc. #9] is DENIED, that Commissioner's Motion for Judgment on the Pleadings [Doc. #11] is GRANTED, and that the final decision of the Commissioner is upheld.

This the 17th day of May, 2019.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge